UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**KRISTOPHER JAMES THOMPSON,**

    **Plaintiff,**

v.                                                      **Case No: 5:15-cv-380-Oc-28PRL**

**VICTOR MUSLEH, STATE OF
FLORIDA, BANK OF AMERICA, NA
and DOES 1-50**

    **Defendants.**

## I.    REPORT AND RECOMMENDATION[1]

Upon referral, this matter is before the undersigned for consideration of Defendants State of Florida and the Honorable Victor Musleh's Motion to Dismiss (Doc. 10), to which Plaintiff has responded (Doc. 15). Because the Complaint (Doc. 1) is deficient in numerous ways, and there is no basis for this Court's jurisdiction, I recommend that the Complaint be dismissed.

### I.    Background

Plaintiff, proceeding *pro se*, presents a 34-page Complaint (Doc. 1), containing numerous claims against the Honorable Victor Musleh, a state court judge; the State of Florida; and Bank of America.[2] Plaintiff alleges that he "suffers from Legal Abuse Syndrome, a form of Post Traumatic Stress Disorder, which is inflicted through abusive language . . . threats, intimidation

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

[2] It appears that Bank of America has not been properly served, and therefore has not yet made an appearance in this action.

and lack of courtesy by those in the legal profession." (Doc. 1, p. 4). Although Plaintiff's Complaint is a rambling, often incoherent collection of legalese and nonsensical allegations, his grievance can be easily summarized. Plaintiff contends that he is "a black male of African American descent," and that his home was discriminatorily and unlawfully foreclosed upon in state court proceedings presided over by Judge Musleh. As best can be discerned from the Complaint, the foreclosure proceedings included Plaintiff being held in contempt of court by Judge Musleh for failing to vacate the property. Apparently displeased with the entire process, Plaintiff initiated this litigation. Plaintiff references being ordered to vacate the property, and an appeal, but the precise posture of the state court proceedings is unclear. (Doc. 1, ¶ 48).

Plaintiff alleges the following claims: (1) declaratory judgment that the Florida Foreclosure Statutes are unconstitutional; (2) violation of civil rights under 42 U.S.C. § 1983 for deprivation of due process and equal protection as to his deprivation of his private property; (3) common law conspiracy against Judge Musleh and the State of Florida for conspiracy to violate his rights; (4) declaratory judgment that the state court summary judgment of foreclosure order and order of contempt is void; (5) unfair and deceptive practices; (6) abuse of legal, legislative and regulatory process; intentional infliction of emotional distress; negligent infliction of emotional distress; and (9) emergency, temporary and permanent injunctive relief. (Doc. 1).

## II.     Legal Standards

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8,

as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, the court will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted).

And, while *pro se* pleadings are liberally construed, courts are not required to "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Inv., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) *overruled in part on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir.2010) ("[E]ven in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action."); *cf. Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

Further, it is important to recognize that jurisdiction is a threshold issue in any case pending in United States district court. Indeed, federal courts are courts of limited jurisdiction, which are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of So. Ala. v. American Tobacco Co.,* 168 F.3d 405, 409 (11th Cir.1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994)). Subject-matter jurisdiction, therefore, is a threshold inquiry that a court is required to consider before addressing the merits of any claim, and may do so *sua sponte* (that is, on its own). *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir.2001) (raising federal jurisdiction issue *sua sponte*); *cf. Fitzgerald v. Seaboard Sys. R.R., Inc.,* 760 F.2d 1249, 1251 (11th Cir.1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). If a court "determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### III. Discussion

As the Defendants correctly argue in their motion to dismiss, Plaintiff has failed to state a claim upon which relief can be granted against the Defendants, and immunities bar the claims as to the State of Florida and the Honorable Victor Musleh. In addition, Plaintiff's Complaint is barred in its entirety by the *Rooker-Feldman* and *Younger* doctrines.

#### 1. *Claims Against the Honorable Victor Musleh*

As to the Honorable Victor Musleh, Plaintiff has specifically named him in Count II pursuant to § 1983 for "racially motivated" deprivation of liberty and property; Count III for common law conspiracy; Count VII for intentional infliction of emotional distress, and Count VIII for negligent infliction of emotional distress.[3]

Despite Plaintiff's allegations that Judge Musleh was acting without jurisdiction as part of a conspiracy against Plaintiff's rights, it is plain that the claims arise from foreclosure proceedings in Marion County Court. According to Plaintiff's own allegations, his grievance arises from Bank of America's initiation of "an action in Marion County Court to foreclosure on [Plaintiff's] lawfully owned property." (Doc. 1, ¶ 26). Plaintiff identifies the property as located at 7696 Southwest 102nd Loop in Ocala, Florida. (Doc. 1, ¶ 24). Further, Plaintiff acknowledges Judge Musleh as presiding over those proceedings. (Doc. 1, ¶ 33, 34, 36, 38, 41, 42).

It is well established that "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (citation and

---

[3] It appears that Count V for deceptive and unfair practices, and Count VI for abuse of legal, legislative and regulatory process, do not mention Judge Musleh, and instead are directed to Bank of America.

internal quotation marks omitted); *see also Dykes v. Hosemann*, 776 F.2d 942, 944 (11th Cir. 1985) ("Since the seventeenth century, common law has immunized judges from suit for judicial acts within the jurisdiction of the court."). "The rationale is that judges should not have to fear that unsatisfied litigants will hound them with litigation." *Weinstein v. City of North Bay Village*, 977 F.Supp.2d 1271, 1281–82 (S.D. Fla. 2013) (citation and internal marks omitted).

In applying the two-pronged test for judicial immunity, "the first question is whether the judge dealt with the plaintiff in his judicial capacity." *William B. Cashion Nevada Spendthrift Trust v. Vance*, 552 Fed.Appx. 884, 886 (11th Cir. 2014). "If he did act in his judicial capacity, then we ask whether the judge acted in the clear absence of all jurisdiction." *Id*. If the judge acted in his judicial capacity, and if he did not act in the clear absence of all jurisdiction, then he is entitled to judicial immunity, as a matter of law. *See Washington Mut. Bank v. Bush*, 220 Fed.Appx. 974, 975 (11th Cir. Mar. 23, 2007) ("Judicial immunity applies when (1) the judge dealt with the plaintiff in his judicial capacity and (2) the judge did not act in the clear absence of all jurisdiction.") (citation and internal marks omitted).

Beginning with step one, the allegations of the Complaint leave no doubt that Judge Musleh dealt with Plaintiff in his capacity as a judge. "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley*, 437 F.3d at 1070. The factual allegations of the Complaint reflect that Judge Musleh's alleged wrongful actions were his entry of various orders as part of foreclosure proceedings pending (as Plaintiff acknowledges) in Marion County Court. Thus, the complained-of conduct by Judge Musleh is the embodiment of a "normal

judicial function." Plaintiff does not suggest otherwise. Under any reasonable application of the concept, Judge Musleh was acting in his judicial capacity.

As to the second prong, judicial immunity bars Plaintiff's claims unless Judge Musleh acted in the clear absence of all jurisdiction. While Plaintiff contends he did lack jurisdiction, this is a high bar. Indeed, "[j]udges do not lose their judicial immunity even if they act in absence of jurisdiction as long as they do not have knowledge that they lack jurisdiction or act in the face of clearly valid statutes or case law expressly depriving them of jurisdiction." *Franklin v. Arbor Station*, LLC, 549 Fed.Appx. 831, 834 (11th Cir. Sept. 27, 2013) (citation and internal marks omitted). Aside from bald allegations, Plaintiff has not identified any facts that might support an inference that Judge Musleh acted in the clear absence of all jurisdiction. To the contrary, the facts pled by Plaintiff suggest Judge Musleh had jurisdiction over the matter, as it pertained to a foreclosure action regarding property located in Ocala, Florida.

Accordingly, the Court concludes that the doctrine of judicial immunity applies, and Judge Musleh is absolutely immune from all claims asserted against him in this lawsuit. In the alternative, Judge Musleh is also entitled to qualified immunity as a public official acting in his discretionary authority. *See Sharp v. Fisher,* 532 F3d 1180, 1183 (11th Cir. 2008).

### 2. *Claims Against the State of Florida*

Plaintiff has named the State of Florida in Count II pursuant to § 1983, Count III for conspiracy, Count VI for abuse of legal, legislative and regulatory process, Count VII for intentional infliction of emotional distress, and Count VIII for negligent infliction of emotional distress.

Under the Eleventh Amendment, a state is protected from being sued in federal court without the state's consent. *See Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir. 2003). The

state of Florida has not consented to be sued in damage suits brought under § 1983. *See Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1515 (11th Cir.1986). Nor has Florida waived its sovereign immunity. See Fla. Stat. § 768.28(18). Also, Congress did not intend to abrogate a state's Eleventh Amendment immunity in § 1983 damage suits. *See Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir.1995). Accordingly, Plaintiff's claim against the State of Florida pursuant to § 1983 is barred.

### 3. The Rooker–Feldman Doctrine

As to the Complaint as a whole and the remaining pendant state law claims, Defendants correctly argue that Plaintiff's Complaint is due to be dismissed in its entirety because it is an improper attempt to review a state court decision.

Although the precise posture of the state court action is unclear, Plaintiff alleges that he was ordered to vacate his property and has appealed, presumably referencing an appeal of a judgment of foreclosure in state court. (Doc. 1, ¶ 48). In that case, Plaintiff's Complaint in this Court is an improper collateral attack on the state court's final judgment in the foreclosure action and, therefore, this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

Under 28 U.S.C. § 1257(a), federal review of state-court judgments may only occur in the United States Supreme Court. Thus, district courts lack jurisdiction to review final state-court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983). The *Rooker–Feldman* doctrine "makes clear that federal district courts cannot review state-court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). The doctrine applies to claims that were actually raised in the state court and those "inextricably intertwined" with that state judgment. *Id.* Where a party did not have a "reasonable opportunity to raise his

[or her] federal claim in state proceedings[,]" however, the doctrine does not apply. *Id.*

The Eleventh Circuit and many district courts in this circuit have applied the *Rooker–Feldman* doctrine to dismiss actions where plaintiffs were, in reality, challenging state-foreclosure judgments. *See, e.g.*, *Parker v. Potter*, 368 Fed.Appx. 945, 947–48 (11th Cir. 2010) (rejecting under *Rooker–Feldman* a federal claim under the Truth in Lending Act ("TILA") that sought rescission of a state foreclosure judgment); *Velardo v. Fremont Inv. & Loan*, 298 Fed.Appx. 890, 892–93 (11th Cir. 2008) (holding that appellants' federal TILA claims were inextricably intertwined with a state-court foreclosure judgment and thus barred by *Rooker–Feldman*); *Harper v. Chase Manhattan Bank*, 138 Fed.Appx. 130, 132–33 (11th Cir .2005) (dismissing federal TILA, Fair Debt Collection Practices Act ("FDCPA"), and Equal Credit Opportunity Act ("ECOA") claims under *Rooker–Feldman* because they were inextricably intertwined with a state-court foreclosure proceeding); *AboyadeCole Bey v. BankAtl.*, No. 6:09–cv–1572–Orl–31GJK, 2010 WL 3069102, at *2 (M.D. Fla. Aug. 2, 2010) (finding the court had no jurisdiction to hear plaintiff's case under *Rooker–Feldman* because the case was, "at its core," an attempt to revisit a state-court foreclosure judgment).

This action, too, at its core, is merely an attempt to revisit the state court's foreclosure judgment. Thus, because this Court lacks subject matter jurisdiction, this action should be dismissed in its entirety, including as to Bank of America.

### 4. The Younger Doctrine

Alternatively, to the extent that the state court action has not reached judgment or remains pending, Defendants correctly assert that the *Younger* abstention doctrine applies. A federal court must refrain from interfering with pending state proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*

*v. Harris*, 401 U.S. 37, 43-44 (1971).  The *Younger* doctrine reflects federal policy against state court intervention except "where necessary to prevent immediate irreparable injury."  *See Samuels v. Mackell*, 401 U.S. 66, 69, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

Although *Younger* involved a criminal proceeding, the doctrine has been expanded to include civil matters. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003). Federal court abstention is required where (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) the parties have an adequate opportunity to raise constitutional claims in the state proceeding.  *See Middlesex Co. Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432 (1982).

Defendants contend that the state courts provide an adequate forum for the Plaintiff to address his claims, and Plaintiff has not alleged (nor can he demonstrate) that there is no adequate remedy available in state court to address his claims.  Accordingly, this Court should abstain from exercising jurisdiction.

### 5. Fed. R. Civ. P. 8

Finally, the Court notes that Plaintiff's Complaint is also insufficient under Fed. R. Civ. P. 8, in that it relies largely on legal conclusions.  For example, Plaintiff alleges that the foreclosure proceedings were unlawful and void, that Judge Musleh was engaged in a conspiracy against him, and that the state court lacked jurisdiction.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Given that dismissal is appropriate for the substantive reasons explained above, it is unnecessary to discuss the Complaint's shortcomings under Rule 8 in great detail.

### IV.    Conclusion

For the reasons explained above, it is respectfully recommended that the Complaint be dismissed in its entirety.

Recommended in Ocala, Florida on January 4, 2015.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy